# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT PEDEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 06-1083 |
| | ) | |
| ALAN UCHTMAN, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

Before the Court is Petitioner Robert Peden ("Peden") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, Peden's § 2254 petition [#1] is DENIED.

## BACKGROUND

On February 27, 2003, following a jury trial in the Circuit Court of Putnam County, Illinois, Peden was convicted of aggravated criminal sexual assault, predatory criminal sexual assault of a child, and aggravated criminal sexual abuse of his ten-year old adopted daughter. Throughout this opinion, the Court will refer to Peden's daughter as A.P.  As a result of the conviction. Peden was sentenced to fifteen years imprisonment on each of the assault convictions.  The two sentences were to run consecutively.  Additionally, Peden was sentenced to a concurrent six year prison term for the abuse conviction.

The Illinois appellate court reviewing Peden's direct appeal set forth the facts as they were presented at Peden's trial.  Those facts are presumed correct, unless Peden rebuts that

presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  Peden does not

challenge the facts as set forth by the appellate court.  The appellate court's factual summary

states:

> The victim, A.P. . . . , is the adopted child of the defendant and his wife.  Prior to being adopted by the P.'s in April of 1999, A.P. resided with the F.'s for approximately one year.  William F. is Mrs. P.'s brother.  On March 11, 2002, A.P. reported to her special education teacher Ms. May, that she had been touched inappropriately by the defendant.  On March 12, 2002, she was interviewed by sheriff's deputy John Ellena and Department of Children and Family Services (DCFS) investigator Judy O'Brien. During the interview, A.P. described a long-standing course and pattern of abuse beginning shortly after she was adopted by defendant. O'Brien filed a report with the State indicating that there was credible evidence to support A.P.'s allegations of sexual abuse.

> On March 18, 2002, A.P. was interviewed by Kari Koster, the director of Henry County Children's Advocacy Center.  In the videotaped interview, Koster posed open-ended questions to A.P. about the abuse. In response, A.P. gave detailed answers describing the abuse to which she had been subjected, including times, dates and details concerning specific incidents of abuse. A.P. also exhibited sexual knowledge that Koster considered advanced for a 10-year old child. This videotapes interview was played to the jury during Koster's trial testimony despite defendant's objection.

> O'Brien and Koster were witnesses at trial and questioned regarding their qualifications. Koster testified that she worked as a "forensic interviewer" who interviewed children to discover the existence of sexual abuse. She stated she had attended several conferences and training classes related to interviewing abused children and that she had interviewed over 300 abused children as a forensic interviewer. O'Brien testified that she had worked for DCFS for 10 years and had interviewed over 1,000 children.
> Koster was asked to describe her interviewing technique.  She responded that she attempted to elicit from the child a stream-of-consciousness narrative describing the abuse without the use of specific cues or questions. Koster was allowed to comment on whether, in her opinion, A.P.'s accusations were credible. Koster believed they were. O'Brien was also allowed to testify whether she believed A.P. to be credible. She did.

> On March 13, March 26, and April 30 of 2002, A.P. was examined by Nancy Auer. Ms. Auer is a nurse at the Pediatric Resource Center. During the initial examination, the nurse noted an abrasion on A.P.'s hymen. Ms. Auer testified this was consistent with sexual abuse. In the second examination, Ms. Auer noted that the abrasion appeared to be healing. In the third examination, Ms. Auer observed

continued healing of the abrasion and also observed several blisters that had erupted in A.P.'s clitoral area and on her labia majora. A culture from the blisters indicated the presence of the herpes II virus, commonly referred to as genital herpes.

A.P.'s medical history indicated that in July of 2000, she was examined by physician assistant Robert Girard, who diagnosed her with herpes and noted that she was suffering from her "primary outbreak." Girard testified that his examination of A.P. revealed that she exhibited symptoms of genital herpes, and therefore, he referred her to Dr. Sean Bailey to perform a blood test. The blood test confirmed the existence of the herpes virus.

Physician assistant Girard further testified that approximately one year prior to diagnosing A.P. with genital herpes, he diagnosed the defendant with genital herpes. Girard ordered no viral test on the defendant but prescribed an antiviral medication. The defendant's herpes infection was confirmed on April 17, 2000, when he was examined by Dr. Constantino Perales. Blood tests performed by Perales confirmed the presence of both the herpes I and herpes II viruses.

Dr. Sean Bailey testified on behalf of defendant. Dr. Bailey testified that he saw A.P. as a patient on August 2, 2000. The purpose of her visit revolved around some lesions in her genital area. Cultures taken from the lesions came back positive for herpes. Dr. Bailey noted that he "talked with [A.P.] *in the presence of her mother*, defendant wife, and asked her if she'd ever been touched or had anybody done anything with her in her genital area," and "she said no."

Defense counsel then asked Dr. Bailey if herpes can be transmitted nonsexually. Dr. Bailey stated, "There's some speculation that it can. You can get it through kissing of course, and you can-there's some speculation that you can get it through autoinoculation." He continued on direct examination to note that he had "never seen a case" of autoinoculation but, in his opinion, it theoretically could happen. On cross-examination, Dr. Bailey stated that he had never seen any proven case studies noting herpes could be transmitted by autoinoculation. When discussing his failure to report the fact that an eight-year-old patient of his had genital herpes, a sexually transmitted disease, to DCFS, Dr. Bailey stated that in hindsight, "Yeah, I would have reported to DCFS."

A.P. testified that she lived with the P.'s for three to four years. She used to go shopping with her mother and, at times, watch television with the defendant. She stated that the defendant touched parts of her body that he "wasn't supposed to." After claiming that these parts included her "front private," she identified her genital area on a chart as the area which defendant inappropriately touched.

She testified that he touched this area both with his hand and his penis. He would start with his hand while she was either sitting or lying down. The touching took place inside her clothes. The first time the touching took place with within a few weeks after she moved in with the P.'s.

She stated that the defendant told her not to tell anyone about these encounters. When they were over, defendant would go into the bathroom, get cleaned up and tell A.P. to do the same. At time, A.P. would have to wash off a "clear liquid." The defendant would, at times, use Vaseline on himself and A.P.

On cross-examination, A.P. stated that these encounters happened "almost" every day. A.P. stated that on March 11, 2002, she told her special education teacher about the touching. On that day, she mentioned that the last encounter took placed on March 10, 2002.

A.P. admitted during her testimony that she lied to her special education teacher on March 11, 2002, when she told the teacher that the defendant inappropriately touched her on March 10, 2002. A.P. also admitted to telling therapist Diane Funk, in 1999, that no one had inappropriately touched her. At trial, A.P. stated that the last time the defendant inappropriately touched her was August 2001.

The defendant presented several witnesses in an attempt to impeach A.P.'s credibility and bolster his own. Therapist Diane Funk had seen A.P. on two occasions in 1999. Funk testified that A.P.'s mother (defendant's wife) took A.P. to Funk for issues related to lying and masturbating. At the initial appointment, Funk asked A.P. whether she had been touched inappropriately and A.P. responded that she had not.

The defendant also called Gene Randolph as a witness.  Randolph was the Putnam County school psychologist. He testified that A.P. had a reputation for lying and that he would not believe her, even if she testified under oath.  The defendant's brother-in-law, William F., also testified.  He stated that he had been A.P.'s adoptive father prior to the defendant and stated that A.P. had a reputation for lying.  Furthermore, Patrick Lewis, a friend of the defendant's, also testified that A.P. had a reputation for lying.

The defendant testified on his own behalf. He stated that on March 11, 2002, A.P. was upset with him and his wife because they would not allow her to see J.I., a 15-year-old boy. He testified that he and his wife had previously disciplined A.P. for seeing this boy. He denied sexually abusing A.P., but admitted that he had herpes. He stated that he had noticed A.P. had cold sores, which are a form of herpes.

The defendant's wife testified that A.P. had never told her that the defendant was abusive. Furthermore, she had never seen the defendant act inappropriately. The defendant's wife confirmed that on March 11, 2002, she had an argument with A.P. regarding a 15-year-old boy. A.P. was upset about not being able to see J.I., and the defendant's wife was upset about A.P. stealing and lying.  A.P. allegedly

told the wife during this argument that the wife "would pay" for not allowing A.P. to see J.I.

Prior to trial, the court ruled on a number of motions *in limine*. One of these included the State's motion to bar the defendant from presenting testimony from his wife and various houseguests suggesting that the defendant did not have the opportunity to commit the crimes for which he was accused. The purpose of this testimony was to show that there were houseguests in the defendant's small house on nights when the abuse allegedly occurred and the defendant would not have had the opportunity to commit the abuse in such a small, full house. The court granted the State's motion, finding that the evidence regarding the houseguests was of "extremely limited" probative value.

The State filed a motion to bar testimony that A.P. had previously alleged that J.I. kissed her and asked her for oral sex. The court granted this motion and barred the evidence pursuant to the Illinois rape shield statute (725 ILCS 5/115-7 (West 2002)).

The State also filed a motion to bar evidence related to A.P.'s mental health treatment. Specifically, the State sought to bar evidence that A.P. told Girard that she had sought treatment for a lying problem in the past and that she often lied without knowing why. This motion also sought to prohibit the defendant's wife from testifying that she took A.P. for mental health treatment because of A.P.'s lying and masturbation. The court granted the State's motion and barred the evidence pursuant to a provision of the Mental Health and Developmental Disabilities Confidentiality Act (740 ILCS 110/10(a) (West 2002)).

Finally, the State filed a motion to bar evidence that A.P. falsely accused the defendant of biting her. The court found such evidence not probative and granted the State's motion.

(*People v. Robert P.,* 354 Ill. App. 3d 1051, 1054–57 (2005).)

Peden appealed his convictions and sentence to the Illinois appellate courts. In his appeal, Peden argued that he was denied his constitutional right to present evidence at trial because the trial court's rulings prevented Peden from being able to present evidence that he lacked opportunity to commit the crimes, evidence that the victim had made previous accusations of sexual misconduct against another person, evidence of the victim's mental health, and evidence that the victim had made a prior false allegation against Peden. Peden also argued that

he was denied his right to a fair trial when expert opinions regarding the victim's accusations were admitted at trial, when the victim's prior consistent statements were admitted at trial, and when a video-taped interview of the victim was admitted at trial.  Additionally, Peden argued that he was denied effective assistance of counsel, the evidence failed to establish guilt beyond a reasonable doubt, numerous errors deprived Peden of his due process right to a fair trial, the trial court abused its discretion in imposing Peden's sentences, and the trial court violated *Apprendi v. New Jersey,* ADD CITE, in imposing Peden's sentences.

On January 6, 2005, the Illinois appellate court affirmed Peden's convictions and sentences.  Peden then filed a Petition for Leave to Appeal to the Illinois Supreme Court.  In that petition, Peden argued that the trial court erred in applying Illinois evidence law when it allowed two witnesses to testify that the victim's accusations were credible and that the trial court's evidentiary rulings prevented Peden from being able to present his defenses.  Specifically, in his petition, Peden argued that the trial court erred when it prohibited Peden from presenting (1) testimony from his wife that Peden lacked the opportunity to commit the offenses; (2) evidence that the victim had made a prior allegation of sexual misconduct against another person; (3) testimony from Peden's wife that she had previously sought treatment for the victim's lying; and (4) evidence that the victim had previously accused Peden of biting her.  The Illinois Supreme Court denied Peden's petition on March 30, 2005.

On March 29, 2006, Peden filed the instant petition for writ or habeas corpus.  In his petition, Peden raised six grounds for habeas relief.

**Ground One**

    1.  Peden was denied his constitutional right to present evidence in his defense at trial because:

    a.   the trial court granted the prosecutor's pre-trial motion to preclude defendant from presenting numerous witnesses who lived in the residence who would testify that Peden lacked the opportunity to commit the offenses;

    b.   the trial court precluded Peden from presenting evidence that the victim had made a prior false accusation of sexual misconduct against another person;

    c.   the trial court granted the prosecutor's pre-trial motion to preclude Peden from presenting evidence that the victim's mother sought mental health treatment for the victim due to the victim's lying; and

    d.   the trial court granted the prosecution's pre-trial motion to preclude Peden from presenting evidence that the victim had made a prior false accusation against him.

**Ground Two**

2.   Peden was denied his due process right to a fair trial when:

    a.   The trial court permitted two prosecution witnesses to offer expert opinion testimony that the victim's accusations were truthful;

    b.   The trial court repeatedly admitted the victim's prior consistent statements;

    c.   The trial court admitted a video-taped interview of the victim; and

    d.   The trial court admitted the victim's hearsay statement to a DCFS investigator and sheriff's deputy that Peden committed the offenses.

**Ground Three**

3.   Peden was denied his right to effective assistance of counsel when his counsel:

    a.   failed to object when two witnesses improperly offered expert opinion that the victim's accusations were truthful;

    b.   failed to object to the repeated admission of the victim's prior consistent statements;

    c.   did not move to preserve a portion of the video-taped interview after the trial court granted the prosecutor's motion to redact it;

    d.   repeatedly permitted argument on defense objections to be heard off the record and failed to preserve the record for appeal; and

   e.   failed to raise meritorious claims in the post-trial motion, which resulted in
        the appellate court finding that these issues were waived on direct appeal.

**Ground Four**

   4.   The evidence failed to establish Peden's guilt beyond a reasonable doubt:

        a.   the prosecution never offered any evidence of Peden's age, an essential
             element of the offense;

        b.   the victim's testimony was entirely incredible because the jury would have
             reached the opposite conclusion if the prosecution not been allowed to
             offer improper opinion testimony regarding the victim's credibility, the
             improper video-tape interview;

        c.   the victim's testimony was vague and uncertain and in response to leading
             questions by the prosecutor and the victim had a reputation for
             untruthfulness;

**Ground Five**

   5.   Peden was denied his constitutional due process right to a fair trial because
        numerous errors cast doubt on the reliability of the judicial process and the errors
        in the trial prejudiced him and deprived him of a fair trial.

**Ground Six**

   6.   The trial court abused its discretion in sentencing Peden when it ignored the
        objective of rehabilitation and the presence of mitigating factors.

**Ground Seven**

   7.   The trial court violated *Apprendi v. New Jersey* when it sentenced Peden to
        consecutive sentences without submitting said issue to a jury.


The State filed an Answer to Peden's § 2254 petition on August 2, 2006. Peden's

traverse was due 21 days after Respondent's answer was served upon him. Assuming that Peden

received Respondent's Answer within one week of it being filed, Peden's traverse should have

been filed on or before August 30, 2006. To date, Peden has not filed a traverse; however, since

the time for filing has passed, the Court presumes that Peden has opted not to file a traverse and

this order follows.

## LEGAL STANDARD

Before reaching the merits of a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254, a district court must consider "whether the petitioner exhausted all available state remedies and whether the petitioner raised all his federal claims during the course of the state proceedings." *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991), *quoting Henderson v. Thieret*, 859 F.2d 492, 496 (7th Cir. 1988). If the answer to either of these questions is "no," then the failure to exhaust state remedies or procedural default bars the petition. *Id.* In other words, if a petitioner fails to give the state courts a full and fair opportunity to review his claims, then his petition must fail. *Bocian v. Godinez*, 101 F.3d 465, 468–69 (7th Cir. 1996).

Exhaustion of a federal claim occurs when it has been presented to the highest state court for a ruling on the merits or when it could not be brought in state court because a remedy no longer exists when the federal petition is filed. *Id.* In the present case, Respondent does not argue that Petitioner has failed to exhaust his state remedies.

Procedural default occurs when a claim could have been but was not presented to the state court and cannot, at the time the federal petition is filed, be presented to the state court. *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992). This occurs in one of two ways. First, a procedural default may occur when a petitioner fails to pursue each appeal required by state law, *Jenkins v. Gramley*, 8 F.3d 505, 507-08 (7th Cir. 1993), or when he did not assert the claim raised in the federal habeas petition in the state court system. *Resnover*, 965 F.2d at 1458–59. The second way in which a petitioner may procedurally default a claim is when a state court disposes of the case on an independent and adequate state law ground, regardless of whether that ground is substantive or procedural. *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 2553–55 (1991).

9

Federal review is barred for claims that are procedurally defaulted unless the petitioner can demonstrate cause and prejudice.  *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 1572–73 (1982); *Farrell*, 939 F.2d at 411.  Review in federal court is also possible if a fundamental miscarriage of justice would otherwise occur in that a constitutional error probably resulted in the conviction of someone who is actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 864-67 (1995).

With respect to claims that are not barred either for failure to exhaust or procedural default, federal courts must employ a strict analysis.   A petition must be denied with respect to any claim previously adjudicated on the merits in a state court unless the decision of the state court:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also Lindh v. Murphy*, 96 F.3d 856, 868–71 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320, 117 S.Ct. 2059 (1997).

Subsection (d)(1) instructs that Supreme Court precedent governs legal questions.  *Id.* at 869.  In resolving mixed questions of law and fact, relief is unavailable unless "the state's decision reflects an unreasonable application of the law," meaning federal courts are to have a hands-off attitude unless the state court judgment is premised on an unreasonable error.  *Id.* at 870 (internal quotation marks omitted).  A responsible, thoughtful decision that is made after a full opportunity to litigate suffices, "even if it is wrong."  *Id.* at 871, 876-77.  Subsection (d)(2) pertains to a decision constituting an unreasonable determination of the facts, and, according to

28 U.S.C. § 2254(e)(1), factual issues are presumed to be correctly resolved.  A petitioner must rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## DISCUSSION

### A.    Procedural Default

The State argues that federal review of many of Peden's claims is barred because Peden procedurally defaulted these claims.  Specifically, the State argues that Peden procedurally defaulted his second, third, fourth, fifth, sixth, and seventh claims.

A failure to raise a claim in one complete round of state court review results in procedural default.  Here, Peden procedurally defaulted grounds four, five, six, and seven because he included these claims in his appeal to the Illinois Appellate Courts but not in his Petition for Leave to Appeal to the Illinois Supreme Court.  In ground four, Peden argues that the evidence failed to establish his guilt beyond a reasonable doubt because the prosecution never offered evidence of his age, the victim's testimony was not credible, the victim's testimony was vague, uncertain, and provided in response to leading questions by the prosecutor, the victim did not provide sufficient specific dates, and the victim had a reputation for untruthfulness.  Peden did not make these arguments in his Petition for Leave to Appeal.  In his Petition for Leave to Appeal, Peden argued that the trial court erred when it misapplied evidence law and allowed two lay witnesses to give opinion testimony on the credibility of the victim's testimony.  Peden also argued that he was denied his Sixth Amendment right to present his theory of defense to the jury when the trial court made certain evidentiary findings.  In the Petition for Leave to Appeal, Peden did not argue that the evidence failed to establish his guilt beyond a reasonable doubt and therefore Peden procedurally defaulted this claim.

In ground five, Peden argues that his constitutional due process right to a fair trial was violated because numerous errors cast doubt on the reliability of the judicial process and the errors in the trial prejudiced him and deprived him of a fair trial.   However, Peden did not raise this issue in his Petition for Leave to Appeal and therefore he has procedurally defaulted this claim.

Similarly, in ground six, Peden argues that the trial court abused its discretion in sentencing him because the trial court ignored the objective of rehabilitation and the presence of mitigating factors; however, this claim was not included in his Petition for Leave to Appeal and therefore the state courts did not have one full opportunity to review this issue.   As a result, Peden procedurally defaulted this claim.   Finally, Peden did not raise ground seven, his claim that the trial court violated *Apprendi v. New Jersey* when it sentenced him to consecutive sentences without submitting said issue to a jury in his Petition for Leave to Appeal. Accordingly, Peden has also procedurally defaulted this claim.

The State next argues that Peden procedurally defaulted claims b, c, d of ground two because they were not included in his Petition for Leave to Appeal.   These claims include Peden's claim that his due process rights were violated when the trial court admitted the (1) victim's prior consistent statements, (2) a video-taped interview of the victim, and (3) the victim's statements to a DCFS investigator and sheriff's deputy.   The Court agrees.   Peden did not raise any allegations regarding his due process rights in his Petition for Leave to Appeal and therefore he procedurally defaulted these claims.   Additionally, the Court finds that Peden procedurally defaulted ground three because he did not raise the issue of ineffective assistance of counsel in his Petition for Leave to Appeal to the Illinois Supreme Court.

The State also argues that Peden procedurally defaulted his claim that he was denied his right to present a defense at trial because the trial court excluded evidence that the victim had made a prior false accusation against another person (ground one, claim b).  Specifically, Peden argues that his rights were violated because the he was not allowed to introduce evidence that the victim had accused J.I., a fifteen year old boy, of asking her to perform oral sex.  The State argues that Peden procedurally defaulted this claim because he did not present present the claim to all three levels of the state courts.  The State argues that, throughout his case, Peden made alternative arguments with respect to the trial court's decision to prevent him from introducing evidence that the victim previously accused J.I. of making sexual advances towards her.

In the trial court, Peden argued that he was entitled to have this evidence introduced because this evidence demonstrated that the victim had a motive to lie because Peden and his wife refused to allow her to see J.I.  Peden also argued this in the appellate court; however, he did not argue it in his Petition for Leave to Appeal.  Accordingly, Peden procedurally defaulted this claim.

Peden's alternative argument is that the trial court erred in refusing to admit this evidence because this evidence established that the victim may have obtained her advanced sexual knowledge from J.I., rather than from Peden.  Peden addressed this issue in his direct appeal as well as his Petition for Leave to Appeal; however, Peden did not address this issue to the trial court.  Accordingly, the trial court never had the opportunity to decide whether Peden's theory that the victim had obtained her sexual knowledge from J.I. was sufficient to justify the court to allow this evidence to be introduced to the jury.  Therefore, Peden procedurally defaulted his claim that the trial court erred when it refused to allow him to introduce testimony regarding J.I.'s alleged sexual advances towards the victim because he did not give each level of the

Illinois state courts a full and fair opportunity to review this claim in light of the theories he presented.

With respect to Peden's claim that he was denied due process when two prosecution witnesses offered improper opinions regarding the victim's truthfulness, the State argues that these claims are procedurally barred because the state courts decided these claims on adequate and independent state grounds. "When the last state court to issue an opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground, federal habeas review of the claim is foreclosed." *Miranda v. Leibach,* 394 F.3d 984, 991 (7th Cir. 2005). This often occurs when "the petitioner failed to comply with a state procedural rule and the state court relied on that procedural default to refrain from reaching the merits of the federal claim." *Id.* at 991–92 (citing *Coleman v. Thompson,* 501 U.S. 772, 729–30 (1991). The last state court to review this claim was the Illinois Appellate Court. In its opinion, the Appellate Court stated:

> Defendant contends that it was error to allow Kari Koster and Judy O'Brien to testify regarding whether they found A.P.'s statements to be credible. We agree. However, we do not believe that this error warrants reversal of defendant's conviction. There was no objection to this testimony at trial and it was not plain error.
>
> Objections not raised in the trial court and in posttrial motions are waived on review. *People v. Enoch,* 122 Ill.2d 176, 119 Ill.Dec. 265, 522 N.E.2d 1124 (1988); *People v. Herrett,* 137 Ill.2d 195, 148 Ill.Dec. 695, 561 N.E.2d 1 (1990). Our supreme court, in *Enoch,* stated the main purpose for the plain error exception to the waiver doctrine is to correct any serious injustices that have been done to the defendant. Thus, where evidence is closely balanced, a reviewing court may consider errors that have not properly been preserved for review. *Enoch,* 122 Ill.2d at 199, 119 Ill.Dec. 265, 522 N.E.2d 1124. We do not believe that the admission of the opinion testimony constituted a serious injustice to the defendant nor do we believe that the evidence is closely balanced.
>
> Illinois adheres to the rule that credibility may only be established through reputation evidence. Again, we agree that the admission of the opinion testimony

was error. However, this error was technical and insignificant and did not change the outcome of the trial. Illinois remains one of the very few jurisdictions that prohibits opinion testimony on the issue of credibility. The Illinois viewpoint has been harshly criticized by commentators, and it is suggested that opinion evidence of character based on personal knowledge and belief is superior to reputation evidence, which is the " gathering of others' opinions, rumors and gossip introduced as hearsay in disguise." M. Kadish & J. Elmore, *Illinois' "Grotesquely Outdated" Ban of Opinion Character Evidence in Criminal Cases,* 86 Ill. B.J. 268, 271 (1998). Most jurisdictions follow Rule 405 of the Federal Rules of Evidence, which allows opinion testimony on the issue of character. M. Kadish & J. Elmore, *Illinois' "Grotesquely Outdated" Ban of Opinion Character Evidence in Criminal Cases,* 86 Ill. B.J. 268 (1998). Clearly, any error was nothing more than a technical violation of the Illinois Rules of Evidence and did not affect any fundamental right of the defendant. As this evidence can be properly admitted down the street at the federal courthouse or across the border in a neighboring state, the defendant's argument, claiming it was a "serious injustice" to admit it in this case, fails.

It is also worth mentioning that defendant, himself, elicited improper opinion testimony regarding A.P.'s truthfulness. Defendant called Gene Randolph, the Putnam County school psychologist. Randolph testified that A.P. had a reputation for lying. He then went on to testify that he "would not believe her even if she testifie[d] under oath." Patrick Lewis also testified that he was familiar with A.P.'s reputation for being untruthful. He, too, testified that he would not believe A.P. if she testified under oath. Lewis's testimony that he would not believe A.P. if she testified under oath was not based on her reputation. During closing argument, defense counsel pointed out to the jury that several witnesses said they would not believe A.P. if she testified under oath and that one of these witnesses was her school psychologist.

Just like most of the other issues with which we deal in this appeal, no objections were made to this testimony or argument. However, this was improper opinion testimony. We are aware that there are cases which hold that once a witness testifies to someone's reputation for truthfulness, that witness can then be asked whether, based on that reputation, he or she would believe the person in question if that person testified under oath. *People v. Lehner,* 326 Ill. 216, 157 N.E. 211 (1927); *Laclede Bank v. Keeler,* 109 Ill. 385, 1884 WL 9802 (1884); *People v. Bramlett,* 131 Ill.App.3d 616, 86 Ill.Dec. 868, 476 N.E.2d 44 (1985). While these cases stand for the aforementioned proposition, they do not discuss the logical inconsistency between the ban on opinion character evidence in Illinois on the one hand and allowing someone who says he is familiar with someone's reputation to testify whether he would believe that person, if the person testified under oath, on the other. It makes absolutely no sense to allow a witness to form an opinion of credibility based upon reputation and to testify to that opinion, while chanting the mantra that Illinois does not permit opinion testimony on credibility. This is

absolutely no different from asking a witness whether he or she thinks a person is credible. There is no difference between saying, "I would not believe this person if she testified under oath," and "In my opinion, this person is a liar."

Moreover, we reject the notion that this error affected the outcome of the trial. The testimony was that Kari Koster and Judy O'Brien found A.P.'s complaints of abuse to be credible. Both of those witnesses were testifying on behalf of the State. Their appearance at trial as State witnesses likely already led the jury to conclude that they found A.P.'s complaints to be credible.

Furthermore, the evidence in this case was not closely balanced. There was more than enough evidence to convict the defendant. The medical testimony at trial stated that A.P.'s primary outbreak of genital herpes occurred in July of 2000, which was after the abuse began and after the defendant was confirmed to be infected by the same virus. At age 10, she described how defendant molested her, ejaculated on her, how he would go to the bathroom to clean himself up and how he would give her a damp cloth and tell her to clean herself up after each such event. She was able to describe the ejaculate. Defendant's argument that this type of sexual knowledge could have been obtained from kissing a 15-year-old boy and his request for oral sex is unconvincing.

As evidence of the defendant's guilt was overwhelming and, having found that no fundamental error occurred, we need not consider alleged trial errors that were waived by failure of the defendant to properly raise the issues below via objection and posttrial motion. It was not plain error for the trial court to allow Koster's and O'Brien's opinion testimony.

*People v. Robert P*. 354 Ill.App.3d 1051, 1061–63 (3d Dist. 2005).

Here, the Illinois Appellate Court relied on an adequate and independent state ground when it found that Peden waived his objection to the introduction of this evidence. Additionally, although the Appellate Court reviewed the issue for plain error, the Seventh Circuit has found that "an Illinois court does not reach the merits of a claim simply by reviewing it for plain error." *Miranda v. Leibach,* 394 F.3d 984, 992 (7th Cir. 2005) (finding that the state court's plain error review of petitioner's claim did not cure the procedural default created by petitioner's failure to include the claim in his motion for new trial as required by Illinois law). In this case, Illinois law requires defendants, such as Peden, to object to the introduction of evidence in order to preserve

the issue for appeal. *People v. Enoch*, 122 Ill.2d 176 (noting that a failure to object at trial and file a written post-trial motion raising an alleged error at trial are required to prevent an issue from being waived). Here, Peden did not raise this issue in his Motion for New Trial or as an objection at trial. Accordingly, Peden waived the issue and the state court's reliance on the waiver was an adequate and independent state ground for their decision.

Despite the fact that Peden procedurally defaulted many of his claims, a federal court is able to review these claims if Peden can demonstrate cause and prejudice or a fundamental miscarriage of justice. To establish cause, a petitioner must show that some external impediment prevented him from asserting his federal claim in state court. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). Prejudice can be established where a petitioner can show " not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *United States v. Frady,* 456 U.S. 152, 170 (1982). Here Peden makes no real attempt to argue that his default should be excused based on cause and prejudice or a fundamental miscarriage of justice. Accordingly, Peden procedurally defaulted many of his claims and this Court is unable to review these claim in the context of this habeas action.

**B.      Merits**

Peden's final three arguments all relate to his claim that he was denied his right to present a defense at trial because the trial court excluded certain evidence. This evidence includes (1) the testimony of witnesses that other people lived in Peden's residence and therefore Peden lacked the opportunity to commit the alleged crimes; (2) evidence that the victim's mother sought mental health treatment for the victim due to her lying; and (3) evidence that the victim had made a prior false accusation against Peden.

In his habeas petition, Peden argues that he was denied his constitutional right to present evidence in his defense at trial [when the trial court] granted the prosecution's pre-trial motion to preclude defendant from presenting numerous witnesses who lived in the residence who would testify that Defendant lacked the opportunity to commit the offenses as described by the complainant." (Peden's Habeas Petition, at 5.)  A review of the trial court record indicates that the prosecution's only motion in limine with respect to this issue was a motion in limine to prevent Peden's wife from testifying that other individuals lived or stayed at the Peden residence. Additionally, although Peden argued in his direct appeal to the appellate court that the trial court erred in preventing his wife and *other witnesses* from testifying about this, he did not argue that the trial court erred in refusing to allow witnesses, other than his wife, from testifying in his Petition for Leave to Appeal to the Illinois Supreme Court.   Accordingly, that claim is procedurally defaulted and the only portion of this claim that is not procedurally defaulted is his claim that the trial court erred when it ruled that his wife could not testify that other individuals stayed or lived at the house.

With respect to this claim, the state appellate court stated:

> Defendant claims that the trial court committed error when it granted the State's motion *in limine,* which sought to bar the defendant's wife from testifying as to who lived or stayed at the defendant's residence. Defendant attempted to introduce this testimony to show that he lacked the opportunity to commit the offenses as accused by A.P.  Defendant also attempted to call, as witnesses, these houseguests. The State, while arguing its motion *in limine,* brought to the court's attention that none of these witnesses had been disclosed in pretrial discovery. The court then stated, "If you haven't disclosed those people, obviously they will be barred from testimony. It's not a trial by surprise, but that issue aside, [the State's] motion is granted. It's a red herring as far as the Court is concerned. It has extremely limited and probative value to this case."

> The admissibility of evidence is within the sound discretion of the trial court and its ruling will not be reversed unless there was an abuse of that discretion. *People v. Williams,* 181 Ill.2d 297, 229 Ill.Dec. 898, 692 N.E.2d 1109 (1998). Evidence

is relevant when it tends to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without that evidence. *People v. Gonzalez,* 142 Ill.2d 481, 154 Ill.Dec. 643, 568 N.E.2d 864 (1991).

Defendant seems to suggest that the mere presence of these other individuals made it factually impossible for him to molest his adolescent daughter. Obviously, the acts of which he was accused could have occurred whether he and his daughter were the only people in the house or whether 30 additional people were in the house. Given our standard of review and the fact that reasonable people can differ as to the probative nature of this evidence, we do not believe it was reversible error to exclude this evidence.

*People v. Robert P*. 354 Ill.App.3d 1051, 1058–59 (3d Dist. 2005).

As this claim was raised in the state appellate court, the Court reviews this claim under the standard set forth in 28 U.S.C. § 2254(d).[1] This statute states that a petition must be denied with respect to any claim previously adjudicated on the merits in a state court unless the decision of the state court:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Here, Peden does not cite any cases demonstrating that the state appellate court's opinion resulted in a decision that was contrary to, or involved an unreasonable application of Supreme Court precedent. In fact, a review of Supreme Court precedent indicates that the state appellate court relied on the proper legal standard when it found that "[e]vidence is

---

[1]   The State contends that the appellate court did not address Peden's constitutional claim that he was denied the ability to present certain defenses at trial with respect to these three remaining claims; however, a review of the state appellate decision indicates that "[t]he gravamen of defendant's appeal is that the trial court's rulings, when taken as a whole, deprived him of the opportunity to put on a viable defense." Accordingly, the Count finds that the state court properly considered each of the issues raised in the appeal in light of their effect on Peden's argument that he was denied his constitutional right to present certain defenses at trial because of the trial court's evidentiary rulings.

relevant when it tends to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without that evidence." *See Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 587 (1993). Accordingly, the Court finds that the state appellate court's decision upholding the trial court's ruling was not contrary to or an unreasonable application of Supreme Court precedent and this claim is denied.

Moreover, even if the Court were to find that Peden could overcome the highly deferential standard of 28 U.S.C. § 2254, Peden would not be entitled to habeas relief on this claim because Peden's wife actually testified that other individuals lived in the home at the time that the attacks allegedly took place. Peden's wife testified that her twin teenaged sons lived in the house, and Christina Munson, Nathan Webb, and Nathan's mother had been staying at the house. (Trial transcript, at 442.) Accordingly, Peden is not entitled to habeas relief on this claim.

Peden's next argument is that he was denied his right to present a defense at trial because the trial court excluded evidence that the victim's mother sought mental health treatment for the victim due to her lying. The state appellate court addressed this issue and found:

> Defendant claims it was error not to allow his wife to testify that she sought mental health treatment for A.P. from Diane Funk due to A.P.'s "lying and her behavior of masturbating." The trial court found that the evidence was not relevant or probative and it was barred by section 10 of Illinois's Mental Health and Developmental Disability Confidentiality Act (the Act) (740 ILCS 110/10 (West 2002)). Again, we review evidentiary matters such as this under an abuse of discretion standard. While reasonable people could find that the statement from defendant's wife regarding her purpose for taking A.P. to psychological counseling is a statement of fact, it is undoubtedly pregnant with improper lay opinion testimony. Had the defendant's wife been allowed to testify that she sought psychological counseling for A.P.'s lying, she would be implicitly telling the jury that it was her opinion A.P. had a psychological problem. The trial court clearly had the discretion to bar this evidence. Moreover, since the trial court allowed Diane Funk (the therapist to whom defendant's wife took A.P. for treatment) to testify, any error created by keeping out the wife's testimony was

20

harmless. We need not reach the issue of whether the testimony was properly excluded under the Act.

*People v. Robert P.* 354 Ill.App.3d 1051, 1059–60 (3d Dist. 2005). Again, Peden does not argue, or cite any relevant case law, indicating that the state appellate court's decision was contrary to, or an unreasonable application of Supreme Court law. A review of Supreme Court law indicates that trial judges are permitted to exclude evidence that is repetitive, only marginally relevant, or poses an undue risk of prejudice of confusion of the issues. *Crane v. Kentucky,* 476 U.S. 683, 689 (1986). Here, any testimony that Peden's wife could have offered on this subject would have been repetitive because Diane Funk, the mental health specialist, testified herself that Peden's wife had brought A.P. in because of her behavior, specifically, her lying.

As Diane Funk was allowed to testify regarding the exact same issue that Peden's wife would have testified, the Court finds that the state appellate court's decision affirming the trial court's ruling on Peden's wife's testimony did not violate Peden's sixth amendment right to present a defense. Peden was able to present his defense through the testimony of Diane Funk and therefore further testimony from his wife regarding this same issue would have been cumulative. *Horton v. Litscher,* 427 F.3d 498, 506 (7th Cir. 2005) (citing *wade v. Mantello,* 333 F.3d 51, 60 (2d Cir. 2003) ("The Constitution leaves to the judges who must make [evidentiary] decisions 'wide latitude' to exclude evidence that is 'repetitive [or[ only marginally relevant.'"). Accordingly, the state appellate court's decision affirming the trial court's discretionary decision was not contrary to, or an unreasonable application of Supreme Court precedent.

Peden's final argument is that he was denied his right to present a defense at trial because the trial court excluded evidence that the victim had made a prior false accusation against Peden. The state appellate court stated:

Defendant attempted to introduce evidence that A.P. had previously falsely accused him of biting her. Defendant's purpose is obvious: A.P. lied then and she is lying now. There is nothing in the record to suggest the false biting accusation was sexual in nature. This attempt at impeachment was based on a specific bad act: a previous specific lie that is not closely related to the crime with which defendant is charged. Our supreme court recently affirmed that specific-act impeachment is prohibited in Illinois. *People v. Santos,* 211 Ill.2d 395, 286 Ill.Dec. 102, 813 N.E.2d 159 (2004).

While the *Santos* decision dealt with the admissibility of evidence under the rape shield statute, which is not at issue on this point of law in this case, the court's comments are still relevant here. "What defendant wished to do by introducing this evidence was to impeach the victim's credibility with a specific act of untruthfulness. He wished to show the jury that T.K. had lied on one occasion-when she told medical personnel she had not had sexual intercourse with anyone else in the previous 72 hours-in order to support his argument that when she testified in court she was lying about what had occurred between her and the defendant. Far from being constitutionally required, specific-act impeachment is *prohibited* in Illinois." (Emphasis in original.) *Santos,* 211 Ill.2d at 403-04, 286 Ill.Dec. 102, 813 N.E.2d 159.

We hold it was not error to exclude evidence of defendant's false accusation regarding the biting incident.

*People v. Robert P.* 354 Ill.App.3d 1051, 1060–61 (3d Dist. 2005).  In his petition, Peden does not state what defense he would have advanced if the trial court allowed him to present evidence that A.P. had previously made accusations against him.  Upon review, it appears from Peden's appellate brief and his petition for leave to appeal that Peden sought to introduce this evidence to demonstrate that A.P. had a propensity for lying.  However, a review of the record indicates that Peden consistently attacked A.P.'s credibility throughout the trial by introducing evidence that A.P. had a habit of lying.  Through the testimony at trial, Peden was able to argue this exact point.  On the stand, A.P. acknowledged that she had falsely accused Peden of sexually abusing her on May 10th.  From this and other testimony such as that of Diane Funk who testified that A.P. had been to see her because she had a problem with lying, Peden was able to argue that A.P. was not credible.   Accordingly, the trial court's decision not to allow Peden to introduce

evidence that A.P. had falsely accused Peden of biting her in the past would have been cumulative to the evidence presented at trial.  As a result, the state appellate court's decision was not contrary to, and unreasonable to, Supreme Court law.

## CONCLUSION

The Court notes that the record in this case indicates that there were arguably multiple evidentiary errors in the trial of this matter; however, due to the strict standard of review required for a § 2254 petition, Peden's petition [#1] must be DENIED for the reasons set forth above. This matter is terminated.

ENTERED this 1st day of September, 2006.

s/Michael M. Mihm
Michael M. Mihm
United States District Judge